1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INGA HELENE ISAKSON, individually,
and DONNA DACKO, individually,

            Plaintiffs,

      v.

WSI CORPORATION, a Massachusetts
corporation, and UNITED STATES OF
AMERICA,

            Defendants.

CASE NO. C09-1792-RSM

ORDER GRANTING SUMMARY
JUDGMENT

## I. INTRODUCTION

This matter comes before the Court upon Defendant WSI Corporation's ("WSI") Motion

to Dismiss (Dkt. #13). As explained below, the motion was converted into a Motion for

Summary Judgment under Fed. R. Civ. P. 56. Dkt. #36. For the reasons set forth below, the

Court GRANTS WSI's motion for summary judgment.

## II. BACKGROUND

On Christmas morning 2007, Plaintiffs traveled from Seattle, Washington to Ontario,

California on Alaska Airlines Flight No. 464 as part of their normal duties as flight attendants.

1    The flight was scheduled to take off at approximately 7:00 a.m. and arrive at approximately 9:46

2    a.m.  The pilots of Flight 464 were given a briefing packet containing preflight weather

3    information from WSI.  Plaintiffs' third amended complaint ("complaint") alleges that WSI

4    knew or should have known that Alaska Airlines relied on it to provide accurate weather

5    information including SIGMETS[1].  WSI's information indicated "no WSI hazardous weather" on

6    Flight 464's route as of 6:25 a.m.

7         In fact, the National Weather Service had issued a SIGMET as early as 2:00 a.m.,

8    warning of "occasional severe turbulence" below 12,000 feet in the Southern California area.

9    The National Weather Service issued another SIGMET advising of the same conditions at 6:00

10   a.m., and that weather information was valid until 10:00 a.m.  There is a dispute regarding

11   whether WSI notified Alaska Airlines of the SIGMETS.

12        As Flight 464 descended into Ontario, Plaintiffs were walking about the cabin performing

13   their duties.  At approximately 8,300 feet, the flight encountered a "violent jolt" – severe and

14   previously unexpected turbulence.  Plaintiffs were thrown into the air, struck their heads on parts

15   of the seats and suffered severe injuries.  Passengers on the flight were unharmed because they

16   were seated with seatbelts fastened.  Plaintiffs allege that, had the pilots known of the turbulence,

17   they would have altered their route or required the flight attendants to be seated and belted when

18   entering potentially turbulent skies.

19        On February 18, 2010, WSI moved to dismiss the complaint on the grounds that it owed

20   no duty to Plaintiffs to provide accurate weather information or SIGMETS.  Dkt. #13.  In its

21   motion, WSI explained that it has a contract with Alaska Airlines, unmentioned in the complaint,

22   _____

23   [1] A SIGMET is a Significant Meteorological Information – a type of in-flight aviation weather
     advisory issued by the National Weather Service. SIGMETS are issued for dust storms, volcanic

24   ash, severe icing, and turbulence not associated with thunderstorms. Dkt. #13 at 4, n.1.

ORDER GRANTING SUMMARY JUDGMENT - 2

that provides that its services are provided "as is," that relying on weather information is

inherently risky, that WSI makes no representations as to the accuracy of its forecasts, that WSI

is not responsible for errors resulting from omitted information, and that WSI is not liable for

acts of God.  Based on the contract, WSI claimed it owed no duty to Alaska Airlines or to

Plaintiffs.  In response, Plaintiffs claimed that they were unaware of the contract and therefore

disputed its authenticity.  Dkt. #18.  They argued that because WSI had attached materials

outside the pleadings to its motion to dismiss, the motion should be converted into a motion for

summary judgment.  The Court stayed discovery pending a ruling on the motion.  Dkt. #34.

Ultimately, the Court determined that the contract was critical and it could not consider

the contract without converting WSI's motion to dismiss into a motion for summary judgment.

Dkt. #36.  Nonetheless, it also found that the questions of whether the contract disclaimed any

duty owed to Plaintiffs and whether that disclaimer was legally effective were legal issues that

could be resolved by looking only to the complaint and the contract.  Accordingly, the Court

converted the motion to dismiss into a motion for summary judgment under Rule 56 and

requested further briefing on whether a duty existed in light of the contract.  The Court further

ordered a continuance to enable Plaintiffs to conduct limited discovery to determine whether the

contract was authentic.  Discovery on matters other than the authenticity of the contract were

stayed until the continued motion was resolved.  Plaintiffs filed a Response on October 22, 2010;

Defendants filed a supplemental brief on November 5.  Dkt. #s 45, 46.

In their supplemental briefing, Plaintiffs admit that in January 2006, WSI and Alaska

Airlines entered into an Agreement entitled, "WSI Corporation Contract for Equipment and

Services."  Under the Agreement, WSI promised to provide "Services" to Alaska Airlines, which

included providing Weather Alerts every 5 minutes, Severe Weather Outlooks every 6 hours, and

U.S. SIGMET alerts every 15 minutes.  Dkt. 14 at 11-13 (Agreement Attachment A).  The Agreement also contains the following provisions:

- The provisions of this Agreement are for the benefit of the parties to the Agreement and not for the benefit of any other parties.  Dkt. 14 at 9 (Agreement ¶ XV).

- WSI assumes no responsibility with respect to the use by the customer or its employees or clients of the services, equipment, or software, other than as expressly stated in this agreement.  WSI shall not be liable for any loss, injury, or damage, resulting in whole or in part from any act of God[.]  *Id.* at 8 (Agreement ¶ IX(C)).

- Customer [Alaska Airlines] acknowledges and agrees that the Services are wholly advisory in nature and all actions and judgment taken with respect to the Services are Customer's sole responsibility.  *Id.* at 9 (Agreement ¶ VIII).

- WSI makes no warranty with respect to the services and, accordingly, the services hereunder are provided "as is."  Except as expressly stated in this Agreement, WSI makes no express or implied representations of warranties of any kind, including but not limited to warranties of fitness for a particular purpose of intended use or of merchantability (which are disclaimed).  *Id.*

- WSI shall not be responsible for errors resulting from omitted, misstated, or erroneous information or assumptions, except when caused by the gross negligence or intentional misconduct of WSI.  *Id.*

- Customer acknowledges the inherent risk of relying upon weather data and forecasts and [Alaska Airlines] is urged to verify the Services against other sources prior to use.  *Id.*

The Agreement remained in effect through December 25, 2007 – the date of the incident here at issue.

1

# III. DISCUSSION

2

## A. Standard of Review

3      Summary judgment is appropriate where "the pleadings, the discovery and disclosure

4 materials on file, and any affidavits show that there is no genuine issue as to any material fact

5 and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); *Anderson v. Liberty*

6 *Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh

7 evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine

8 issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny &*

9 *Meyers*, 969 F.2d at 747).  Material facts are those which might affect the outcome of the suit

10 under governing law. *Anderson,* 477 U.S. at 248.

11      The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

12 *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512

13 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential

14 element of her case with respect to which she has the burden of proof" to survive summary

15 judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of

16 a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

17 evidence on which the jury could reasonably find for the plaintiff."  *Id.*

18      To prove actionable negligence, Plaintiffs must establish that (1) WSI owed a duty to

19 Plaintiffs; (2) WSI breached that duty; (3) an injury resulted to Plaintiffs; and (4) the claimed

20 breach was a proximate cause of the injury.  *Hansen v. Friend,* 118 Wn.2d 476, 478 (1992).

21 WSI moves for summary judgment on the basis that, in light of its contract with Alaska Airlines,

22 it does not owe a duty of care in favor of the Plaintiffs.  The existence of a legal duty is a

23 question of law. *Id.* at 479.

24

ORDER GRANTING SUMMARY JUDGMENT - 5

**B. Duty arising out of the contract between WSI and Alaska Airlines**

Washington courts recognize that, in certain circumstances, a contract between two parties may give rise to a tort duty in favor of a third party. *See Kelley v. Howard S. Wright Construction Co.,* 582 P.2d 500 (Wash. 1 978). *Kelley* held that a general contractor owed a duty of care towards a subcontractor's employees who were injured while working on a construction job site. *Id.* at 506-07. There, as in the case at bar, the general was party to a contract with the subcontractor (the plaintiffs' employer) – a contract to which plaintiffs were not parties. *Id.* There, the subcontractor agreed that "[a]dequate precautions must be taken at all times to insure safe conditions," and promised to "be responsible to insure safe conditions." *Id.* at 503-04. Thus, like the WSI contract, the contract between the plaintiffs' employer and the general allocated responsibility for safety with the plaintiffs' employer.

*Kelley,* however, is crucially different than the case now before the Court. In *Kelley,* there was a *second* contract: the contract between the general and the owners of the construction project. In the *second* contract, the general promised the owners that it would be responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the work." *Id.* at 503. It also promised it would "erect and maintain .. all reasonable safeguards for safety and protection." *Id.* Most importantly, the duty held by the court to run from the general to the subcontractor's employees arose out of this *second* contract. *Id.* at 506 ("[W]e hold the general] assumed a nondelegable duty of care to employees of subcontractors in its contract with the owners.").[2]

---

[2] *Kelley* also held, separately, that the general owed plaintiffs a duty to take reasonable care to provide a safe place to work under the common law of tort. As discussed below, no similar tort duty exists in the case at bar.

ORDER GRANTING SUMMARY JUDGMENT - 6

Here, there is no second contract.  The only contract at issue is the contract between WSI and Alaska Airlines – a contract in which WSI specifically declined to assume any responsibility for "errors resulting from omitted, misstated, or erroneous information or assumptions."  Dkt. #14 at 9 (Agreement ¶ VIII).   In contrast to the second contract in *Kelley,* WSI did not assume any "affirmative duty" towards Plaintiffs in its contract with Alaska Airlines.  *See Kelley,* 582 P.2d at 507 ("[A]n affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them.").  Thus, *Kelley* is clearly distinguishable from the facts here at issue.

Moreover, *Kelley* also suggests that any duty owed to third parties arises out of contractual *provisions* – not merely by virtue of a contract's existence.  The *Kelley* court took care to identify the specific contractual provision in which the general assumed duties in favor of plaintiffs.  *Id.* ("In Article 10 of the contract [the general] assumed responsibility . . .").  Further, to support finding a duty towards third parties arising out of that provision, it looked to cases involving "contract provisions similar to those involved in this case." Thus, the focus in *Kelley* was on the language of the contract and whether the contract contemplated an assumption of duty towards a third party.

This approach was also employed in *Rucshner v. ADT, Sec. Sys.*, *Inc.*, 204 P.3d 271 (Wash. Ct. App. 2009).  *Ruschner* held that Puget Sound Protection (PSP) – an authorized security services dealer for ADT Security Systems, Inc. (ADT) – owed a contractual duty towards third parties to run a criminal background check on its employees.  Again, in so holding, the Court looked to the language of the contract.  A provision in the contract provided that, "PSP represents and warrants that all of its employees utilized to perform services under this Agreement have successfully passed a drug screen and criminal background check…"  204 P.3d

1   at 279.   Pointing to this "affirmative duty assumed by contract," the Court held that PSP owed a

2   duty to its customers to perform background checks on its employees.  *Id.* at 278-79.   Finally, in

3   *Pruneda v. Otis Elevator Co.,* the court looked at contractual provisions in deciding that an

4   elevator maintenance company had assumed only the common carrier standard of care – not a

5   heightened standard – in its agreement with the City.  828 P.2d 642 (Wash. 1992)

6          Following the guidance of *Kelley, Ruschner,* and *Pruneda*, this Court looks to the

7   language of the WSI contract.  Under the contract, WSI promised to provide Alaska Airlines

8   with "Data Services."  Dkt. #47 at 4(Agreement p.1).  Services are defined as the "Weather Data

9   Subscription Services described in Attachment A of this Agreement to be rendered by WSI."  *Id.*

10   (Agreement ¶ I(E)).  Attachment A of the Agreement (the "VECTOR Dispatch Aviation Product

11   Set") lists three pages of data products and the corresponding frequency with which WSI

12   promised to render the information.  Some types of information, including SIGMETs in the form

13   of "Text Weather Data," are to be provided every 15 minutes.  *Id.* at 12.  Other types of

14   information are to be provided at differing intervals – for instance, satellite imagery is to be

15   delivered by WSI intervals ranging from every 30 minutes for North America imagery, to every

16   6 hours for "N. Atlantic POES image."

17          There is no provision in the contract in which WSI promises that the information it

18   provides will be accurate or complete or that it will take reasonable care in providing the

19   Services promised under the contract.  Rather, "WSI makes no representations with respect to the

20   predictive value or accuracy of its weather forecasts or of its Services, and WSI shall not be

21   responsible for errors resulting from omitted, misstated or erroneous information or assumptions,

22   except when caused by the gross negligence or intentional misconduct of WSI."  *Id.* at 7-8

23   (Agreement ¶ VIII).  *Cf. Kelley* 582 P.2d at 506 (holding that the general assumed a duty to third

24

parties because the contract explicitly provided that it would be responsible for "all safety

precautions.").  Third parties are not mentioned in the contract except to the extent that the

parties agree that the contract is "for the benefit of the parties to the Agreement and not for the

benefit of any other parties."  Dkt. #47 at 9 (Agreement ¶ XV).  Alaska Airlines also agrees to

indemnify WSI for any claims against it by third parties.  *Id.* at 8 (Agreement ¶ IX(B)).

Applying the logic of *Kelley* and its progeny, there is simply no provision in the contract that

would support the conclusion that WSI assumed a duty of care towards third parties such as

Plaintiffs.  Moreover, if a court were to hold that duty of care towards third parties arose from the

kind of contract at issue here, all information services companies would be liable to third parties

as a result of erroneous information given to those with whom it was in privity, regardless of the

provisions of its contract.  This is certainly not the law in Washington.  Accordingly, the Court

holds that, as a matter of law, Defendant WSI did not owe Plaintiffs a duty of care arising out of

its contract with Alaska Airlines.[3]

**C.  Tort duty independent of contract**

Plaintiffs contend that WSI owed Plaintiffs a tort duty of care that existed independent of

the contract with Alaska Airlines.  Plaintiffs contend that this is so because considerations of

logic, common sense, justice, precedent, and policy dictate that a weather company *should* owe a

duty to airlines passengers under these circumstances.  Failing the establishment of a general

---

[3] Plaintiffs also allege that WSI assumed a duty of slight care towards Plaintiffs by virtue of the provision in its contract with Alaska Airlines in which it states, "WSI shall not be responsible for errors resulting from omitted, misstated, or erroneous information or assumptions, *except when caused by the gross negligence or intentional misconduct of WSI*."  Dkt. #14 at 9 (Agreement ¶ VIII) (emphasis added).  Plaintiffs do not allege in the complaint that WSI's conduct constituted gross negligence.  Further, WSI did not assume a duty of slight care towards Plaintiffs for the same reasons that it did not assume a duty of reasonable care – such a construction is not supported by the language of the contract which states that the parties agree that the contract is "for the benefit of the parties to the Agreement and not for the benefit of any other parties."  *Id.*

duty owed by weather companies like WSI to customers of its contractual partners, Plaintiffs

argue that WSI owed Plaintiffs a duty to warn them of the hazardous weather under the rescue

doctrine.  Plaintiffs offer essentially two theories to support this claim.  First, Plaintiffs argue that

WSI created a risk of harm when it told Flight No. 464, "No WSI hazardous weather" before

take-off on December 25, 2007 and creating a risk of harm gives rise to a duty.  Second,

Plaintiffs contend that WSI voluntarily undertook a duty to warn plaintiffs of hazardous weather.

Each of Plaintiffs' theories fail as a matter of law.

    1.  <u>WSI did not owe a common law tort duty to Plaintiffs.</u>

       Washington courts decide whether to impose a duty of care based on considerations of

"logic, common sense, justice, policy, and precedent." *Christensen v. Royal School Dist. No.

160,* 124 P.3d 283, 285 (Wash. 2005).  Plaintiffs offer no Washington precedent for the

proposition that companies that provide weather information to airline companies owe a duty of

care to passengers and employees traveling on planes operated by those airlines companies.

Indeed, the Court is not aware of any case in any state that imposes such a duty.

       Further, WSI contends that Plaintiffs' claims are more accurately construed as claims for

negligent misrepresentation.   The Court agrees that Plaintiffs claims may be fairly construed as

such. *See Friedman v. Merck & Co.,* 131 Cal. Rptr. 885, *cert. denied* 538 U.S. 1033 (2003)

(construing negligence claims as claims for negligent misrepresentation because the language in

the complaint focused on defendants' representations and plaintiffs' reliance on them). [4]

Washington has adopted Restatement (Second) of Torts § 551 (1977) as the standard for a claim

of negligent misrepresentation based on allegations of a failure to disclose. *Colonial Imports,

Inc. v. Carolton N.W., Inc.,* 853 P.2d 913 (Wash. 1993).  Pursuant to the Restatement, a party

---

[4] Plaintiffs do not address this argument.

1   does not owe a duty to disclose information "that he knows may justifiably induce the other to

2   act or refrain from acting" except in the context of a business transaction and except to prevent

3   pecuniary loss.  *Id.* Clearly, Plaintiffs claims do not satisfy the elements of a traditional claim for

4   negligent misrepresentation.  Moreover, Washington has never recognized a tort for "Negligent

5   Misrepresentation Involving Risk of Physical Harm," which is a separate cause of action under

6   the Restatement (Second) of Torts § 311 (1965).  In *Richland Sch. Dist. V. Mabton Sch. Dist.,* the

7   Washington Court of Appeals noted that Washington has not adopted § 311 and no Washington

8   case has discussed its applicability to common law.  45 P.3d 580 (Wash. 2002).   Thus, precedent

9   appears to weigh heavily against imposing a duty in the circumstances of this case.

10          In addition, logic, common sense and justice do not compel the imposition of a duty

11   flowing from WSI to the third-party plaintiffs: third parties may always seek redress for any

12   injuries caused by erroneous weather information from the airline itself and the airlines are in a

13   position to collect weather information from multiple sources to mitigate harm.

14          Both parties argue strenuously that policy considerations compel either imposing or

15   declining to impose such a duty.  Plaintiffs argue that a duty should exist in order to enhance the

16   deterrent effect of tort law on negligent providers of weather data, which is necessary in an era of

17   increasing "outsourcing" and "unbundling" in order to cut costs.  Defendant WSI argues that

18   imposition of such a duty would result in a "chilling effect" and the decreased availability of

19   weather information to airline companies.  Both sides' policy arguments have merit.  However,

20   in light of the status quo, the Court does not find Plaintiffs' policy considerations so clearly

21   compelling to suggest that, if this case were before the Washington Supreme Court, it would

22   create a new duty where there was none before. *See Giles v. General Motors Acceptance Corp.*

23   494 F.3d 865, 872 (9th Cir. 2007) ("Where the state's highest court has not decided an issue, the

24

task of the federal courts is to predict how the state high court would resolve it.") (citations omitted).

2. <u>WSI did not owe a duty to come to the aid of Plaintiffs under the "rescue doctrine."</u>

Under traditional tort law, a party does not owe a duty to come to the aid of a stranger. *Folsom v. Burger King,* 958 P.2d 301, 310 (Wash. 1998) (citing Keeton, *supra*, at §56). However, there are certain exceptions to this rule. *Id.* Plaintiffs argue that WSI owed a duty to Plaintiffs because (a) WSI created the harm and/or (b) WSI undertook to rescue them from the harm. Plaintiffs' theory fails on both counts.

a. *WSI did not create an unreasonable risk of harm giving rise to a tort duty.*

Washington courts recognize that "every actor whose conduct involves an unreasonable risk of harm to another is under a duty to exercise reasonable care to prevent the risk from taking effect." *Minahan v. Western Washington Fair Ass'n,* 73 P.3d 1019, 1027 (Wash. 2003). *See also* W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts*, § 53, at 378 (5th ed. 1984) (While there may be "no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse."). Thus, for example, in *Minahan,* the plaintiff claimed that the defendant owed her a duty to make a parking condition safe because he created an unreasonably dangerous situation by not having the keys to the gate of the county fairgrounds, thereby requiring her to unload her supplies in a parking spot by the side of the road. *Id. Minahan* held that no duty existed even under those circumstances because reasonable minds could reach but one conclusion as to whether plaintiff's injury – getting hit by a drunk driver – was a foreseeable risk of not having the keys to the gate. 73 P.3d at 1027.

Similarly, reasonable minds would not conclude that Plaintiffs' injuries were a forseeable risk of WSI's purported failure to convey accurate weather information and the relevant

1    SIGMET to Flight No. 464.  Defendant did not create the turbulence that caused Plaintiffs'

2    injuries. The counterfactual under this theory is not a situation in which WSI accurately

3    conveyed the information about hazardous weather conditions and the SIGMET to Alaska

4    Airlines, but the situation in which WSI never agreed to provide any weather information to

5    Alaska Airlines in the first place.  It is the latter that constitutes the affirmative act taken by WSI.

6    Providing weather information to airline companies does not put all affected airline passengers in

7    an unreasonably dangerous situation.[5]  Further, since this theory calls on the court to determine

8    that providing weather information to an airline company is an "unreasonably dangerous action,"

9    *see Minahan,* 73 P.3d at 1027, it is essentially a reiteration of the argument already addressed

10   above.  Thus, the Court declines to impose such a duty for the reasons state above as well.

11        *b.  WSI did not assume a duty to rescue Plaintiffs*

12        One who undertakes to rescue another in danger is required by law to exercise reasonable

13   care in his efforts.  *Brown v. MacPherson's, Inc.,* 545 P.2d 13, 18 (Wash. 1975).  To establish a

14   duty under the rescue doctrine, a party must show that (1) the defendant promised to help

15   another, (2) the other was in danger, and (3) the promise induced justifiable reliance by the party

16   in need.  *Folsom,* 958 P.2d at 311.  There are no genuine issue of material facts concerning any

17   of these elements.

18        First, even construing the facts in a manner most favorable to Plaintiffs, WSI did not

19   undertake or promise to rescue Plaintiffs from the dangers of hazardous weather.  The only

20   promise at issue in this case is a promise by WSI to Alaska Airlines to provide regularly updated

21   weather information.  The contract specifically contemplated that the information might be

22   ───────────────────

23   [5] This is especially true under the circumstances of this case where WSI and Alaska Airlines
     contemplated that Alaska Airlines would obtain weather information from multiple sources.  *See*
24   Dkt. #14 at 9 (Agreement ¶ VIII).

1    inaccurate or contain omissions.  It also urged Alaska Airlines to obtain information from other

2    sources.  Reasonable minds could not interpret such a contract as an undertaking on the part of

3    WSI to prevent harm to Plaintiffs resulting from weather.

4           Second, even if the contract did constitute an undertaking to come to the rescue of

5    Plaintiffs, Plaintiffs fail to allege that WSI knew of the specific danger to Plaintiffs and other

6    passengers on Flight No. 464 *when it made the purported promise*. Thus, this case is materially

7    different from *Brown,* in which the State of Washington was held to owe a duty to plaintiffs to

8    warn them of an avalanche danger.  545 P.2d at 17. There, Mr. Tonnon, an agent for the state,

9    conveyed to the avalanche expert that he would relay the avalanche danger to plaintiffs living in

10   the affected area.  *Id.* Relying on this communication, neither the expert nor any of the other

11   parties who knew about the danger relayed the information to the residents themselves.  *Id.*

12   Thus, in *Brown,* Mr. Tonnon knew about the specific danger to plaintiffs when he undertook to

13   warn them of the danger.

14          In contrast to *Brown*, the *Folsom* court held that a security company did not voluntarily

15   agree to render aid when it failed to remove the security system from a Burger King franchise

16   after its contract with the franchisee had expired.  This was because "the act (leaving the system

17   in place)… took place in this case before any danger existed."  958 P.2d at 311.  The act that

18   Plaintiffs rely on in this case (promising to provide weather information to Alaska Airlines) also

19   took place well before WSI knew that any hazardous weather condition existed in Ontario on

20   December 25, 2007.

21          Finally, Plaintiffs cannot demonstrate that they, nor Alaska Airlines, nor any other party,

22   justifiably relied on WSI's promise to provide weather information to Alaska Airlines.   The

23   plain language of the contract, whereby Alaska Airlines was urged to consult other sources for

24

ORDER GRANTING SUMMARY JUDGMENT - 14

weather information and WSI explicitly disclaimed any and all warranties, makes any such reliance unjustifiable as a matter of law.

3.  Exculpatory Clauses

Plaintiff argues that "exculpatory clauses" contained in the WSI contract violate public policy and are *pro tanto* void.  However, because the Court finds that WSI owes no tort duty to Plaintiffs, any provisions that purport to limit WSI's tort duties to Plaintiffs are inapplicable.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendant WSI's Motion for Summary Judgment  (Dkt. #13) is GRANTED.  WSI owed no duty to Plaintiffs as a matter of law.  Plaintiffs' claims against Defendant WSI are dismissed.

(2)  The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of record.

Dated this 9th day of February 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING SUMMARY JUDGMENT - 15